(Slip Opinion) Cite as: 586 U. S. ____ (2019) 1

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–961

_____

## THEODORE H. FRANK, ET AL., PETITIONERS *v.* PALOMA GAOS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 20, 2019]

PER CURIAM.

Three named plaintiffs brought class action claims against Google for alleged violations of the Stored Communications Act. The parties negotiated a settlement agreement that would require Google to include certain disclosures on some of its webpages and would distribute more than $5 million to *cy pres* recipients, more than $2 million to class counsel, and no money to absent class members. We granted certiorari to review whether such *cy pres* settlements satisfy the requirement that class settlements be "fair, reasonable, and adequate." Fed. Rule Civ. Proc. 23(e)(2). Because there remain substantial questions about whether any of the named plaintiffs has standing to sue in light of our decision in *Spokeo, Inc.* v. *Robins*, 578 U. S. ___ (2016), we vacate the judgment of the Ninth Circuit and remand for further proceedings.

Google operates an Internet search engine. The search engine allows users to search for a word or phrase by typing a query into the Google website. Google returns a list of webpages that are relevant to the indicated term or

phrase. The complaints alleged that when an Internet user conducted a Google search and clicked on a hyperlink to open one of the webpages listed on the search results page, Google transmitted information including the terms of the search to the server that hosted the selected webpage. This so-called referrer header told the server that the user arrived at the webpage by searching for particular terms on Google's website.

Paloma Gaos challenged Google's use of referrer headers. She filed a complaint in Federal District Court on behalf of herself and a putative class of people who conducted a Google search and clicked on any of the resulting links within a certain time period. Gaos alleged that Google's transmission of users' search terms in referrer headers violated the Stored Communications Act, 18 U. S. C. §2701 *et seq.* The SCA prohibits "a person or entity providing an electronic communication service to the public" from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." §2702(a)(1). The Act also creates a private right of action that entitles any "person aggrieved by any violation" to "recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." §2707(a). Gaos also asserted several state law claims.

Google moved to dismiss for lack of standing three times. Its first attempt was successful. The District Court reasoned that although "a plaintiff may establish standing through allegations of violation of a statutory right," Gaos had "failed to plead facts sufficient to support a claim for violation of her statutory rights." *Gaos* v. *Google, Inc.*, 2011 WL 7295480, *3 (ND Cal., Apr. 7, 2011). In particular, the court faulted Gaos for failing to plead "that she clicked on a link from the Google search page." *Ibid.*

After Gaos filed an amended complaint, Google again moved to dismiss. That second attempt was partially

successful. The District Court dismissed Gaos' state law claims, but denied the motion as to her SCA claims. The court reasoned that because the SCA created a right to be free from the unlawful disclosure of certain communications, and because Gaos alleged a violation of the SCA that was specific to her (*i.e.*, based on a search she conducted), Gaos alleged a concrete and particularized injury. *Gaos* v. *Google Inc.*, 2012 WL 1094646, *4 (ND Cal., Mar. 29, 2012). The court rested that conclusion on *Edwards* v. *First American Corp.*, 610 F. 3d 514 (2010)—a Ninth Circuit decision reasoning that an Article III injury exists whenever a statute gives an individual a statutory cause of action and the plaintiff claims that the defendant violated the statute. 2012 WL 1094646, *3.

After the District Court ruled on Google's second motion to dismiss, we granted certiorari in *Edwards* to address whether an alleged statutory violation alone can support standing. *First American Financial Corp.* v. *Edwards*, 564 U. S. 1018 (2011). In the meantime, Gaos and an additional named plaintiff filed a second amended complaint against Google. Google once again moved to dismiss. Google argued that the named plaintiffs did not have standing to bring their SCA claims because they had failed to allege facts establishing a cognizable injury. Google recognized that the District Court had previously relied on *Edwards* to find standing based on the alleged violation of a statutory right. But because this Court had agreed to review *Edwards*, Google explained that it would continue to challenge the District Court's conclusion. We eventually dismissed *Edwards* as improvidently granted, 567 U. S. 756 (2012) (*per curiam*), and Google then withdrew its argument that Gaos lacked standing for the SCA claims.

Gaos' putative class action was consolidated with a similar complaint, and the parties negotiated a classwide settlement. The terms of their agreement required Google to include certain disclosures about referrer headers on

three of its webpages. Google could, however, continue its practice of transmitting users' search terms in referrer headers. Google also agreed to pay $8.5 million. None of those funds would be distributed to absent class members. Instead, most of the money would be distributed to six *cy pres* recipients. In the class action context, *cy pres* refers to the practice of distributing settlement funds not amenable to individual claims or meaningful pro rata distribution to nonprofit organizations whose work is determined to indirectly benefit class members. Black's Law Dictionary 470 (10th ed. 2014). In this case, the *cy pres* recipients were selected by class counsel and Google to "promote public awareness and education, and/or to support research, development, and initiatives, related to protecting privacy on the Internet." App. to Pet. for Cert. 84. The rest of the funds would be used for administrative costs and fees, given to the named plaintiffs in the form of incentive payments, and awarded to class counsel as attorney's fees.

The District Court granted preliminary certification of the class and preliminary approval of the settlement. Five class members, including petitioners Theodore Frank and Melissa Holyoak, objected to the settlement on several grounds. They complained that settlements providing only *cy pres* relief do not comply with the requirements of Rule 23(e), that *cy pres* relief was not justified in this case, and that conflicts of interest infected the selection of the *cy pres* recipients. After a hearing, the District Court granted final approval of the settlement.

Frank and Holyoak appealed. After briefing before the Ninth Circuit was complete, but prior to decision by that court, we issued our opinion in *Spokeo, Inc.* v. *Robins*, 578 U. S. \_\_\_ (2016). In *Spokeo*, we held that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*, at \_\_\_ (slip op., at 9). We rejected the premise, relied on in the decision then under review

and in *Edwards*, that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  578 U. S., at \_\_\_ (slip op., at 9); see also *id.*, at \_\_\_ (slip op., at 5).  Google notified the Ninth Circuit of our opinion.

A divided panel of the Ninth Circuit affirmed, without addressing *Spokeo*. *In re Google Referrer Header Privacy Litigation*, 869 F. 3d 737 (2017).  We granted certiorari, 584 U. S. \_\_\_ (2018), to decide whether a class action settlement that provides a *cy pres* award but no direct relief to class members satisfies the requirement that a settlement binding class members be "fair, reasonable, and adequate." Fed. Rule Civ. Proc. 23(e)(2).

In briefing on the merits before this Court, the Solicitor General filed a brief as *amicus curiae* supporting neither party.  He urged us to vacate and remand the case for the lower courts to address standing.  The Government argued that there is a substantial open question about whether any named plaintiff in the class action actually had standing in the District Court.  Because Google withdrew its standing challenge after we dismissed *Edwards* as improvidently granted, neither the District Court nor the Ninth Circuit ever opined on whether any named plaintiff sufficiently alleged standing in the operative complaint.

"We have an obligation to assure ourselves of litigants' standing under Article III." *DaimlerChrysler Corp.* v. *Cuno*, 547 U. S. 332, 340 (2006) (quoting *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 180 (2000); internal quotation marks omitted).  That obligation extends to court approval of proposed class action settlements.  In ordinary non-class litigation, parties are free to settle their disputes on their own terms, and plaintiffs may voluntarily dismiss their claims without a court order.  Fed. Rule Civ. Proc. 41(a)(1)(A).  By contrast, in a class action, the "claims,

issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. Rule Civ. Proc. 23(e). A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing. *Simon* v. *Eastern Ky. Welfare Rights Organization*, 426 U. S. 26, 40, n. 20 (1976).

When the District Court ruled on Google's second motion to dismiss, it relied on *Edwards* to hold that Gaos had standing to assert a claim under the SCA. Our decision in *Spokeo* abrogated the ruling in *Edwards* that the violation of a statutory right automatically satisfies the injury-in-fact requirement whenever a statute authorizes a person to sue to vindicate that right. 578 U. S., at ___ (slip op., at 9); see *Edwards*, 610 F. 3d, at 517–518. Since that time, no court in this case has analyzed whether any named plaintiff has alleged SCA violations that are sufficiently concrete and particularized to support standing. After oral argument, we ordered supplemental briefing from the parties and Solicitor General to address that question.

After reviewing the supplemental briefs, we conclude that the case should be remanded for the courts below to address the plaintiffs' standing in light of *Spokeo*. The supplemental briefs filed in response to our order raise a wide variety of legal and factual issues not addressed in the merits briefing before us or at oral argument. We "are a court of review, not of first view." *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005). Resolution of the standing question should take place in the District Court or the Ninth Circuit in the first instance. We therefore vacate and remand for further proceedings. Nothing in our opinion should be interpreted as expressing a view on any particular resolution of the standing question.

Per Curiam

\*     \*     \*

The judgment of the United States Court of Appeals for the Ninth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–961

_____

THEODORE H. FRANK, ET AL., PETITIONERS *v.*
PALOMA GAOS, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[March 20, 2019]

JUSTICE THOMAS, dissenting.

Respectfully, I would reach the merits and reverse. As I have previously explained, a plaintiff seeking to vindicate a private right need only allege an invasion of that right to establish standing. *Spokeo, Inc.* v. *Robins*, 578 U. S. \_\_\_, \_\_\_ (2016) (concurring opinion) (slip op., at 6). Here, the plaintiffs alleged violations of the Stored Communications Act, which creates a private right: It prohibits certain electronic service providers from "knowingly divulg[ing] . . . the contents of a communication" sent by a "'user,'" "subscriber," or "customer" of the service, except as provided in the Act. 18 U. S. C. §§2510(13), 2702(a)(1)–(2), (b); see §2707(a) (providing a cause of action to persons aggrieved by violations of the Act). They also asserted violations of private rights under state law. By alleging the violation of "private dut[ies] owed personally" to them "'as individuals,'" *Spokeo*, *supra*, at \_\_\_, \_\_\_ (opinion of THOMAS, J.) (slip op., at 7, 2), the plaintiffs established standing. Whether their allegations state a plausible claim for relief under the Act or state law is a separate question on which I express no opinion.

As to the class-certification and class-settlement orders, I would reverse. The named plaintiffs here sought to simultaneously certify and settle a class action under

Federal Rules of Civil Procedure 23(b)(3) and (e). Yet the settlement agreement provided members of the class no damages and no other form of meaningful relief.* Most of the settlement fund was devoted to *cy pres* payments to nonprofit organizations that are not parties to the litigation; the rest, to plaintiffs' lawyers, administrative costs, and incentive payments for the named plaintiffs. *Ante*, at 3–4. The District Court and the Court of Appeals approved this arrangement on the view that the *cy pres* payments provided an "indirect" benefit to the class. *In re Google Referrer Header Privacy Litigation*, 87 F. Supp. 3d 1122, 1128–1129, 1137 (ND Cal. 2015); *In re Google Referrer Header Privacy Litigation*, 869 F. 3d 737, 741 (CA9 2017).

Whatever role *cy pres* may permissibly play in disposing of unclaimed or undistributable class funds, see *Klier* v. *Elf Atochem North Am., Inc.*, 658 F. 3d 468, 474–476 (CA5 2011); *id.,* at 480–482 (Jones, C. J., concurring), *cy pres* payments are not a form of relief to the absent class members and should not be treated as such (including when calculating attorney's fees). And the settlement agreement here provided no other form of meaningful relief to the class. This *cy pres*-only arrangement failed several requirements of Rule 23. First, the fact that class counsel and the named plaintiffs were willing to settle the class claims without obtaining any relief for the class—while securing significant benefits for themselves—strongly suggests that the interests of the class were not adequately represented. Fed. Rules Civ. Proc. 23(a)(4), (g)(4); see *Amchem Products, Inc.* v. *Windsor*, 521 U. S. 591, 619–620 (1997) (settlement terms can inform adequacy of represen-

_____

*The settlement required that Google make additional disclosures on its website for the benefit of "future users." App. to Pet. for Cert. 50. But no party argues that these disclosures were valuable enough on their own to independently support the settlement.

tation). Second, the lack of any benefit for the class rendered the settlement unfair and unreasonable under Rule 23(e)(2). Further, I question whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy" when it serves only as a vehicle through which to extinguish the absent class members' claims without providing them any relief. Fed. Rule Civ. Proc. 23(b)(3); see Rule 23(b)(3)(A) (courts must consider "the class members' interests in individually controlling the prosecution . . . of separate actions").

In short, because the class members here received no settlement fund, no meaningful injunctive relief, and no other benefit whatsoever in exchange for the settlement of their claims, I would hold that the class action should not have been certified, and the settlement should not have been approved.